For the error above discussed, the judgment of the trial court is reversed and remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

---

## INTERNATIONAL–GREAT NORTHERN R. CO. v. RAILROAD COMMISSION OF TEXAS et al. (No. 6930.)*

(Court of Civil Appeals of Texas. Austin. Feb. 24, 1926. Rehearing Denied March 10, 1926.)

**1. Commerce ☼⇒58—Right of state to require installation and operation of interlocking devices at grade crossing is not ousted by Interstate Commerce Act, § 26, as added by Transportation Act Feb. 28, 1920, § 441 (U. S. Comp. St. Ann. Supp. 1923, § 8596b).**

Although state may not regulate interstate commerce, or unduly burden it, requiring installation and operation of interlocking devices at railroad grade crossings is reasonable exercise of police power for protection of public and railroad employés, and right is not ousted by Interstate Commerce Act, § 26, as added by Transportation Act Feb. 28, 1920, § 441 (U. S. Comp. St. Ann. Supp. 1923, § 8596b), nor any act of Interstate Commerce Commission pursuant to its enforcement.

**2. Railroads ☼⇒90.**

State Railroad Commission is authorized to enforce installation of interlocking devices at railroad grade crossings, under Rev. St. 1911, arts. 6701–6705.

**3. Railroads ☼⇒90—Expense of installing interlocking devices is not required to be borne alone by company whose line was last built (Rev. St. 1911, arts. 5502, 6702).**

Expenses of installing interlocking device at railroad grade crossing is not imposed by Rev.

St. 1911, art. 6702, solely upon company whose line was last built, notwithstanding reference in that article to such railroad company by singular number, which, under article 5502, must be construed to include the plural.

**4. Railroads ☼⇒90—Interlocking devices may be required at crossing of side track by main line track (Rev. St. 1911, art. 6703).**

Installation of interlocking devices at railroad grade crossing may be required at crossing of side track or spur track by main line track, notwithstanding Rev. St. 1911, art. 6703, exempting application of act to crossings of side tracks.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the International-Great Northern Railroad Company against the Railroad Commission of Texas and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Samuel B. Dabney, Walter F. Woodul, and James E. Kilday, all of Houston, for appellant.

J. H. Tallichet, of Houston, Dan Moody, Atty. Gen., and Ernest May, of Austin, for appellees.

BLAIR, J. Appellant sued the Railroad Commission of Texas, the individual members composing it, and the Attorney General of Texas, to have declared void the orders of the commission which required appellant, railroad company, Houston Belt & Terminal Company, and Texas, New Orleans Railroad Company, to install "interlocking devices" at three points where their lines of railway crossed in the city of Houston, Tex.; also to enjoin and restrain the enforcement of the orders, as well as any suit for statutory penalty for failure to obey them.

Appellees answered formally, and upon a hearing of the case, the trial court denied all relief sought by appellant; hence this appeal.

The three companies affected by the orders are Texas corporations operating lines of railway wholly within this state, and are engaged in interstate commerce. If authorized, the orders admittedly come within a reasonable exercise of the state's police power to regulate railroad grade crossings as affecting the public safety. The interlocking devices required to be installed, though not perfect in every respect, admittedly serve well the purposes for which they are intended. Under the facts no serious complaint can be made as to the expenses of installation and operation of the devices, either as to the amount or apportionment thereof. Appellant alone complains of the orders.

The appeal presents no intricate questions of law or fact, but simply attacks the power and right of the state commission to enforce an ordinary police regulation, having for its purpose the protection of life, limb, and prop-

---

☼⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused May 12, 1926.

erty. For specific authority it claims to act by virtue of articles 6701 to 6705, R. S. 1911, relating to the regulation of railroad grade crossings.

Appellant contends: First. That the statutes authorize no action on the part of the state commission with respect to railroad grade crossings, and in no event the particular orders. Second. That, if the state commission had the power to make the orders (which is denied), section 26 of the Interstate Commerce Act as added by the Transportation Act of 1920, section 441 thereof (Comp. St. Ann. Supp. 1923, § 8596b) has ousted it of such power; and, further, that the car service provision, the provision relating to connections between railroads and tracks on docks, the rate-making provision, the borrowing provision of the recapture clause, the valuation provision, the use of terminals provision, and the provision relating to interchange of traffic between carriers of the Interstate Commerce Act as amended by the Transportation Act of 1920, and enacted pursuant to the commerce clause of the United States Constitution (art. 1, § 8, cl. 3) have also ousted the state commission's power and jurisdiction. Neither proposition is sustained.

[1] We think the constitutional provision with reference to the general power of the federal government to regulate commerce is neither questioned nor involved in this proceeding. Nor does the Interstate Commerce Act, as amended by the Transportation Act of 1920, in any of the particulars pleaded by appellant, or any order of the Interstate Commerce Commission pursuant to its enforcement, oust the state of Texas of its power or right to require the installation and operation of interlocking devices at railroad grade crossings as a reasonable exercise of its police power for the protection of the traveling public and railroad employees in life and limb, and of property. While a state may not undertake to regulate interstate commerce or to unduly burden it, still state legislation having for its purpose the protection and welfare of its citizens is authorized, although it incidentally affects interstate commerce; provided such legislation be not in conflict with any act of Congress or lawful order of the Interstate Commerce Commission on the same subject. Western Union Tel. Co. v. Milling Co., 31 S. Ct. 59, 218 U. S. 406, 54 L. Ed. 1088, 36 L. R. A. (N. S.) 220, 21 Ann. Cas. 815; Atlantic Coast Lines R. Co. v. Maszursky, 30 S. Ct. 378, 216 U. S. 122, 54 L. Ed. 411; Western Union Tel. Co. v. James, 16 S. Ct. 934, 162 U. S. 650, 40 L. Ed. 1105; Chicago Rock Island & Pac. Ry. Co. v. Arkansas, 31 S. Ct. 275, 219 U. S. 453, 55 L. Ed. 290; Smith v. Alabama, 8 S. Ct. 564, 124 U. S. 465, 31 L. Ed. 508; Railway v. Alabama, 9 S. Ct. 28, 128 U. S. 96, 32 L. Ed. 352; N. Y., N. H. & H. R. Co. v. New York, 17 S. Ct. 418, 165 U. S. 628, 41 L. Ed. 853;

Mobile Co. v. Kimball, 102 U. S. 691, 26 L. Ed. 238; G. C. & S. F. v. Hefley, 15 S. Ct. 802, 158 U. S. 98, 39 L. Ed. 910; Railroad Co. v. Solan, 18 S. Ct. 289, 169 U. S. 133, 42 L. Ed. 688; Telegraph Co. v. Kansas, 30 S. Ct. 190, 216 U. S. 27, 54 L. Ed. 355; Reid v. Colorado, 23 S. Ct. 92, 187 U. S. 137, 47 L. Ed. 108; Railroad Co. v. Haber, 18 S. Ct. 488, 169 U. S. 613, 42 L. Ed. 878; Atlantic Coast Line R. Co. v. Georgia, 34 S. Ct. 829, 234 U. S. 280, 58 L. Ed. 1312; Erie R. R. v. Public Utilities Com., 41 S. Ct. 169, 254 U. S. 394, 65 L. Ed. 322.

It may be conceded that some of these cases were decided prior to the Transportation Act of 1920; still we find no case or order of the Interstate Commerce Commission construing the act that undertakes to change or disturb the general principle of law announced by them. The act itself does not undertake to do so, except in certain particulars not involved here. The Interstate Commerce Commission Act restricts and confines the activities of that body to the regulation of commerce, rather than to the regulation of railroads, except in so far as they are instruments of commerce. 12 C. J. 121, cases cited note 99. If the congressional records may be relied upon, Congress had no intention, by the passages of the various acts or provisions pleaded by appellant, to change or disturb the general principle of law announced in these cases, except as to the specific matters contained in the act. This was the view of the Supreme Court of the United States in the case of Railroad Commission of California v. Southern Pacific Railway Company, 44 S. Ct. 376, 264 U. S. 331, 68 L. Ed. 713, as to this same general principle of law, and further, with respect to some of the provisions pleaded as ousting the state of jurisdiction in this case, that court held:

"One might, too, readily conceive of railroad crossings or connections of interstate carriers in which the exercise by a state commission of the power to direct the construction of merely local union stations or terminals without extensions of main tracks and substantial capital outlay should be regarded as an ordinary exercise of the police power of the state for the public convenience and would not trench upon the power and supervision of the Interstate Commerce Commission in securing proper regulation of an interchange of interstate traffic or passengers. Only a lawful order of the Interstate Commerce Commission would raise a question of the power of a state commission in such cases, as the proviso of paragraph 17, § 402, of the Transportation Act shows: 'That nothing in this act shall impair or affect the right of a state, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the commission made under the provisions of this act.' "

That same rule should apply with equal, if not greater, force in this case, because

the power sought to be exercised by the state commission has for its purpose the protection of human life as well as of property. It is admitted that by the use of interlocking devices the danger of collision between trains at railroad grade crossings is greatly minimized, if not entirely eliminated. There is no dispute but that the three points sought to be protected greatly need the devices, for at one of them a collision has occurred, taking its toll in human life and destruction of property. Then, too, most of the provisions of the Transportation Act pleaded to oust state jurisdiction in this case relate to matters that are wholly foreign to, and have no connection directly or indirectly with, safety devices for railroad grade crossings. With respect to section 26 of the act, specially pleaded as ousting state jurisdiction in the premises, we quote the following material portion:

"That the commission may, after investigation, order any carrier by railroad subject to this act, within a time specified in the order, to install automatic train stop or train control devices or other safety devices, which comply with specifications and requirements prescribed by the commission, upon the whole or any part of its railroad, such order to be issued and published at least two years before the date specified for its fulfillment. * * *"

The section, in our judgment, refers to automatic train stops or train control devices in use for the prevention of collision between trains on the same track. Apparently that is the construction given the language by the railroads. It is also apparently the construction placed upon it by the Interstate Commerce Commission, for, in carrying out its provisions, that body had only prescribed and promulgated "specifications and requirements" with respect to automatic stops or train control devices, which in no way relate to safety devices for intersecting railroad grade crossings. So we conclude that neither the Transportation Act of 1920, nor any order of the Interstate Commerce Commission pursuant to its enforcement, has deprived this state of its right in the exercise of its police power to regulate grade crossings of Texas railroad corporations as affecting the public safety.

[2] The contention that articles 6701 to 6705, R. S. 1911, do not authorize any action on the part of the Railroad Commission of Texas with reference to installing interlocking devices at railroad grade crossings is wholly without merit. Appellant's view is that the statutes simply require all railroads to install them at each grade crossing. The statutes clearly define the policy of the state with respect to railroad crossings existing prior to their enactment as well as to future ones. They further clearly require that the state's duly constituted agent, the Railroad Commission, shall enforce and carry out that policy. Railroad companies are not required by these statutes to protect each crossing with interlocking devices, but only those that the Railroad Commission may in the exercise of its authority and judgment determine shall be protected as affecting the public safety.

The article directly involved under the facts is 6702, which reads:

"In any case where the tracks of two or more railways cross each other at a common grade in this state, it shall be the duty of such railroad company to protect such crossings by interlocking or other safety devices and regulations to be designated by the Railroad Commission of Texas, to prevent trains colliding at such crossings."

[3] Appellant insists that the language, "such railroad company," as it appears in the article, requires the company whose line was last built to pay all the expenses of installing interlocking devices, and therefore the particular orders apportioning them are unauthorized. The contention is not sustained. The statutory rule of construction requires that the singular number shall include the plural and vice versa. Article 5502, R. S. 1911. Besides, reason would require the apportionment of these expenses as to crossings in existence prior to the passage of the statutes amongst the roads affected.

[4] Appellant insists that the proviso to article 6703, which reads, "That this law shall not apply to crossings of side tracks," renders the state commission's orders nugatory under the facts. The contention is not sustained. The undisputed facts show that at one point, where the orders required the installation of the devices, the main line track of one of the railroads involved crossed a side track or spur track of another of the companies. Appellant contends the orders exceed the commission's authority in this respect. We think the language so clear that we will not discuss it further than to say that it simply means what it says, that the law does not "apply to crossings of side tracks." The language of the proviso has no reference to the crossing of a side track by a main line track.

The other propositions urged by appellant are either without merit or not involved in this case, so the judgment of the trial court will be affirmed in all things.

Affirmed.